## ERB'S APPEAL.

In 1825, A, as the surety of B, confessed a judgment to E, which included a judgment of B to M, obtained in 1822, which latter judgment it was verbally agreed A should have.    A and B, in 1824, gave their judgment bond to O, to prevent the sale of C's goods which O, had levied on.    These goods were then handed to A as a security, and O at once entered judgment on the bond of A and B. E issued an execution on his judgment, and to satisfy the same sold the property thus given to A as a security, and some of A's own property.    In 1827, the proceeds of the real estate of B which were insufficient to pay off all the judgments against him, were brought into Court for distribution; and the question was whether O or D, (to whom after the money was in Court, A had assigned the judgment of B to M, which A claimed as having paid off, and under the verbal agreement,) was entitled to the money.  *Held:* that D, (who came in after the rights of the creditors had attached, of which he had notice,) stood precisely in the place of A, affected with all the equity, secret or apparent, which existed between A and O: and therefore that A, or her assignee, D, could not take this money in opposition to O, to whom A was indebted by the judgment of A and B to him, which was unsatisfied, and because substantially O's property had paid the judgment of B to M in which A claims to be subrogated.

This was an appeal by *Christian Erb*, from the decree of the Court of Common Pleas of Cumberland county, appropriating the proceeds of the real estate of *Barnabas McCormick*, on a sale made by the sheriff.

The following were the facts agreed upon:

"On the 5th of *July*, 1822, a judgment on the report of arbitrators was entered at the suit of *John Martin* against *Barnabas McCormick*, for $401 78, from which *McCormick* appealed.

The 29th *January*, 1825, *Barnabas McCormick*, with *Mary Moore* as his surety, confessed a judgment to *Andrew S. Dearmond*, for $800, which judgment included the judgment of *Martin* against *McCormick* before mentioned.

The 14th April, 1824, *John McCormick* (son of *Barnabas*,) confessed a judgment to *William Orr* for $593 75, on which execution issued forthwith to the sheriff, who returned "levied on defendant's personal property, and sold the same the 13th May, 1824, and paid proceeds to the plaintiff."

At the time this property was about being sold, *Barnabas McCormick* and *Mary Moore* gave a bond for $601 48, to *William Orr*, the plaintiff in the execution, whose judgment was thus satisfied.    The property was then knocked off in the lump to *Mary Moore*, for $750, as a security to her, she paying no money except the sheriff's costs of $21 50, and permitting the goods to remain in the possession of *John McCormick.*    Two

(Erb's appeal).

days after this sale *Orr* entered up judgment on the bond given him, by *B. McCormick* and *Mary Moore*: on this judgment, by a provision in the bond, there was a stay of execution until the 19th *February*, 1825.

The 29th *January*, 1825, *Dearmond*, issued an execution on his judgment, the writ came to the hands of the sheriff the same day, who levied on personal property shown him by *Mary Moore*, as her property, and sold the same the 21st *February*, 1825, for $933 15: A great portion of the property so sold was the same which had been struck down to *Mary Moore*, at the sale of *John McCormick's* property; under *Orr's* execution; of the residue, part was hers, part *Bernard McCormick's*, and part *John McCormick's*: So much of the proceeds of this sale as was requisite, was applied to *D armond's* judgment, and the balance of $58 64, was paid to *William Orr*, who on the 19th *February*, 1825, had issued an execution on his judgment against *McCormick* and *Moore*, which execution came to the hands of the sheriff the day it issued. -

The appeal which had been entered by *Barnabas McCormick* from the report of the arbitrators in *Martin's* case, was withdrawn; the 22d August, 1827. The day previous (the 21st,) *Mary Moore*, for value received, assigned the judgment of *Martin* v. *McCormick*, to *Christian Erb*, and guaranteed the payment of the same. At the time *Martin's* judgment was included in the judgment given by *B. McCormick* and *Mary Moore* to *Dearmond*, it was ... ced by *Martin* and *Dearmond*, that *Mary Moore* should have the amount of said judgment, but no written transfer was made until the 11th *February*, 1829.

In *January*, 1827, *Barnabas McCormick's* real estate was sold on an old judgment of *William Orr's*, No. 251, of *April* term, 1821, for $3,105, which was the fund for distribution, but after paying this judgment and other prior ones, the balance remaining was insufficient to satisfy the judgment of *Martin* against *McCormick*, assigned to *Erb*, and that of *William Orr* against *B. McCormick* and *Mary Moore*, on the bond given by them. The question was, which of these judgments should be first paid. The Court below decreed the money to *Orr*, and from this decree the present appeal was entered.

The case was argued by *Penrose* and *Carothers*, for the appellant, and

*Alexander* for the appellee.

The opinion of the Court was delivered by

ROGERS, J.—That a surety on paying the debt, is entitled to
38

stand in the place of the creditor, and to be subrogated to all his rights against the principal, is unquestionably true ; but it is equally true, that the doctrine of substitution, is founded on pure equity. When therefore, an application is made for substitution, the court will take care, that the subrogation of the surety, shall work no injustice to the rights of others. *King* v. *Baldwin*, 2 *Johns. C. R.* 554. *Cheeseborough* v. *Millard*, 1 *Johns. C. R.* 409. In all such cases, the surety, is entitled to have all prior liens assigned to him for his benefit, and to have a cession of all the rights and securities of the creditors, as if he were a purchaser, either against the principal debtor or his co-sureties. Whether *Mary Moore* has brought herself within the benefit of these principles, is the enquiry to which our attention has been directed. I say *Mary Moore*, for I cannot perceive how her assignee is placed in a better situation. The assignment to *Erb* was made, after the money was raised on the execution and paid into Court. As, then the rights of all the creditors had attached, of which he had notice, he stands precisely in the place of the assignee, affected with all the equity, whether apparent or secret, which existed between her and *Orr*. I shall assume, that the judgment of *Dearmond* v. *McCormick* and *Moore*, did not extinguish the judgment of *Martin* v. *McCormick*, for this would seem from the case stated to have been the understanding of all the parties. If then, *Mary Moore* has paid the judgment of *Dearmond* against herself, and *McCormick*, she would have had a right to be subrogated, not only as respects the latter judgment, but the judgment of *Martin* v. *McCormick*. She would be entitled to all the rights and securities of the creditors. In deciding on the application of *Mary Moore* to be substituted, (for in this light the case must be viewed,) we must consider, that in subrogating her, or which is the same thing, her assignee, we deprive *William Orr* of his debt, by taking from him a real security, and throwing him upon the personal security of *Mary Moore*, who is insolvent. By the execution against *John McCormick*, *Orr* had acquired a specific lien on his property, and this, he consented to relinquish, on *Mary Moore's* becoming security with *Barnabas McCormick* for the debt. In this way she acquired part of the property, which has been sold, and which it is alleged, places her in the situation of a surety, who has been compelled to pay the debt of the principal. It is obvious that for this property *Mary Moore* has paid nothing, as it is not pretended that any part of the bond to *Orr*, has been paid. Nor is it likely that any part of the debt, ever will be discharged.

We do not look upon this as constituting such an equity, as entitles her to be substituted as against *Orr*. We view this as a payment, not with her own funds but substantially with the funds of

(Erb's appeal.)

*Orr.* Nor does this injure her, for by the application of the money arising from the sale, to *Orr's* debt, she is relieved to the extent of the payment. The facts of this case, are defectively found, as they have not ascertained what amount of the debt was paid, with the money arising from the sale of the property she derived from the arrangement with *Orr,* nor the proportion which came from the property of *Barnabas McCormick,* nor what part was paid, with that which properly may be considered her own property. As this is in effect, an application by the assignee, for substitution, this should be done, for otherwise we cannot fix the amount for which he is entitled to be subrogated. But suppose the money was paid entirely out of the funds of *Mary Moore,* is her assignee then entitled to be substituted in the place of the creditor? We think not. A court of chancery will refuse to interfere, unless in a case of pure equity, which this is not: as the direct consequence would be, that *Mary Moore* would take the money out of court, and *Orr* would be compelled to resort to her for payment of the debt, which although it might not be attended with ultimate loss, yet would create great difficulty. The payment of the debt at law, extinguishes the judgment, but a court of equity interferes to prevent injustice to the surety on a principle of benevolence. Where the surety is also a debtor, and but for the substitution the fund would go to the payment of his debt, he cannot incur any loss ; and therefore, there is no call for the extraordinary interposition of the court, to protect his interest. It is the same to him, that his debt should be paid directly from the fund, as if the surety was to receive the money and pay the debt himself. And this case is a strong illustration of the principle.

If the court refuses to permit a substitution, *Mary Moore* suffers no injury, because the fund goes to pay her debt to *Orr.* But if she is allowed to recover the money, and apply it to a different purpose, *Orr* would be injured, as it deprives him of a legal right to the money raised by the sale, and subject to distribution by the Court.

Decree of the common pleas affirmed.